UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CATHLEEN BEAN,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE BANK OF NEW YORK MELLON f/k/a THE<br>BANK OF NEW YORK AS TRUSTEE FOR THE<br>CERTIFICATE HOLDERS OF CWABS, INC.<br>ASSET-BACKED CERTIFICATES SERIES 2007-2,<br><br>　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION<br>)　NO. 1:12-cv-10930 JCB<br>)<br>)<br>)<br>)<br>)<br>) |

**THE BANK OF NEW YORK MELLON'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Defendant, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2007-2 (hereinafter, "BNYM"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state any cognizable claim for relief.

**INTRODUCTION**

BNYM currently holds the Mortgage at issue, secured by Plaintiff's real property at 70 Arrowhead Road, Eastham, Massachusetts ("the Property") and granted by Plaintiff to mortgagee Mortgage Electronic Registration Systems, Inc. ("MERS") on March 14, 2007. Compl. ¶¶ 3, 33.[1]  BNYM became the Mortgage holder on June 21, 2011, when then-mortgagee

---

[1] A true and accurate copy of the Mortgage is **attached hereto as Exhibit 1**. Because Plaintiff's Complaint against BNYM relies heavily on this document, the Court properly may consider it when deciding the instant motion to dismiss. *See McGrath & Co., LLC v. PCM Consulting, Inc.*, No. 11–10930–DJC, 2012 WL 503629, at *9 (D. Mass. Feb. 15, 2012) ("when a complaint relies upon such document … the document will merge into the pleadings and can be properly considered on a motion to

-1-

MERS, as nominee for the lender, assigned all its rights, title, and interest in the Mortgage to BNYM in a publicly recorded Assignment of Mortgage, attached as Exhibit B to Plaintiff's Complaint and as **Exhibit 2 hereto**.

After Plaintiff began defaulting on her required Mortgage payments in or about 2008, *see* Compl. ¶ 15, Bank of America, as servicer of the loan,[2] worked with Plaintiff to see if Plaintiff could qualify for a loan modification that would lower her monthly payment amount. *Id.* ¶ 18. Consequently, in or about December 2009, Bank of America enrolled Plaintiff in a three-month trial period under the federal government's Home Affordable Modification Program ("HAMP"). *Id.* ¶ 18. Unfortunately, as Plaintiff admits, she missed the deadline for the last of her three HAMP trial plan payments, *id.* ¶ 19, and Plaintiff was deemed ineligible for permanent modification as a result.. *Id*. ¶¶ 19-20.

Because Plaintiff has been unable to meet her Mortgage payment obligations and she failed to qualify for modification based on the HAMP applications she submitted to Bank of America, *see id.* ¶¶ 15, 18-20, 25-26,[3] BNYM has taken steps to initiate foreclosure under the Mortgage. *Id.* ¶ 40. While it is regrettable that Plaintiff faces the loss of her Property through

---

dismiss") (*citing Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). The Mortgage is also "appropriately considered in deciding the motion to dismiss" because it is part of the public record with the Barnstable County Registry of Deeds. *See* Compl. ¶ 33; *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (the court may consider "documents the authenticity of which are not disputed by the parties" and "official public records" in deciding a motion to dismiss..

[2] For ease and consistency of reference, the servicer of Plaintiff's Mortgage loan is referred to throughout this brief (as it is in Plaintiff's Complaint) as "Bank of America." To be more precise, Countrywide Home Loans Servicing, LP ("CHLS") serviced Plaintiff's loan until CHLS changed its name on April 27, 2009 to BAC Home Loans Servicing, LP ("BAC"). BAC, in turn, merged wholly with and into Bank of America, N.A. ("Bank of America") on July 1, 2011.

[3] While Plaintiff complains that BNYM did not also evaluate her for inclusion in the Home Affordable Foreclosure Alternatives program ("HAFA"), Compl. ¶ 27, the Court should note that ***nowhere in Plaintiff's Complaint does she ever allege to have submitted any application under such program to BNYM or its servicer, Bank of America***. The only applications Plaintiff ever asserts she submitted were for HAMP, which Bank of America considered and rejected—in one instance after granting Plaintiff a modification trial plan that Plaintiff failed successfully to complete. *See id.* ¶¶ 18-25.

foreclosure, that does not give rise to a legal cause of action against BNYM. Plaintiff admits that BNYM's loan servicer, Bank of America, worked with Plaintiff in pursuit of a loan modification; that Plaintiff is delinquent on her Mortgage payments; and that, when Bank of America previously enrolled her in a HAMP trial plan, Plaintiff failed successfully to complete the program. *See id.* ¶¶ 15-26. Plaintiff (correctly) does not allege in her Complaint that her loan is not currently subject to foreclosure under the terms of the Mortgage. Nevertheless, Plaintiff asks the Court to bar BNYM from exercising its rights as Mortgage holder to foreclose on Plaintiff's defaulted debt, based on a host of asserted claims,[4] almost all of which boil down to the same core argument: that BNYM lacks standing to foreclose under the Mortgage. *See generally id.* ¶¶ 117-236.

As explained herein, that argument holds no water. Based on the facts set forth in the Complaint and the Mortgage documents cited therein, BNYM is the proper entity under Massachusetts law to conduct foreclosure in this case,[5] and Plaintiff's claims based on alleged wrongful foreclosure (for lack of standing) must fail. As to any remaining claims, they too must fail for reasons including the failure of Plaintiff to plead fraud with the required particularity, and the statutory expiration of Plaintiff's time to plead claims based on alleged defects or omissions in the origination of her March 14, 2007 loan. Accordingly, for these and the other reasons set

---

[4] Plaintiff's Complaint purports to allege 14 total causes of action: (1) fraud; (2) transacting business without authority (Foreign Corp.) under M.G.L. c. 156D, §§15.01 – 15.04 and 950 CMR 105.04(d); (3) violation of M.G.L. c. 93A; (4) violation of M.G.L. c. 93, s. 48 – Unfair or Deceptive Trade Practices as defined by 940 CMR 3.09; (5) breach of contract; (6) breach of fiduciary duty; (7) violation of M.G.L. c. 140D; (8) quiet title; (9) negligence; (10) promissory estoppel; (11) declaratory judgment; (12) accounting; (13) violation of M.G.L. Chapter 183 Section 28C; and (14) wrongful foreclosure. Plaintiff filed her Complaint in state court on April 26, 2012, and BNYM removed it to this Court on May 23, 2012.

[5] Under Massachusetts' foreclosure statute, "[t]he statutory power of sale may be exercised by the mortgagee or his executors, administrators, successors or assigns." Mass. Gen. Laws ch. 183 § 21.

forth below, the Court should dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) and (with regard to any fraud-based claim) 9(b) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I. PLAINTIFF MUST ALLEGE SPECIFIC FACTS THAT SUPPORT SPECIFIC CLAIMS IN ORDER TO SURVIVE RULE 12B)(6) DISMISSAL.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts are required to accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Gargano v. Liberty Int'l Underwriters, Inc.,* 572 F.3d 45, 48 (1st Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To comply with Fed. R. Civ. P. 8 and survive a motion to dismiss under Rule 12, a claim "must contain sufficient factual matter … to state a claim for relief that is plausible on its face." *Id.* A plaintiff is not held to a "probability requirement," but must still plead more than a "sheer possibility that a defendant acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that only pleads facts that are "merely consistent with" liability fails to cross the line from "possibility" to "plausibility" and should be dismissed. *Id.*

### II. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST BNYM FOR FRAUD (COUNT I).

Plaintiff fails to plead a cognizable fraud claim against BNYM. The Complaint alleges that BNYM "fraudulently misrepresented to [Plaintiff] the status of BNYM as having [a] legal right, interest and/or authority concerning the Mortgage." Compl. ¶ 119. This is a wrongful foreclosure claim dressed up as fraud, and must be dismissed because it (1) fails to meet the pleading requirements applicable to fraud claims and (2) is directly contradicted by the public

-4-

record—in particular, the publicly recorded Mortgage and Assignment of Mortgage attached hereto as Exhibits 1 and 2,[6] which clearly show that BNYM holds the Mortgage (and, thus, the statutory right to foreclose).

To establish a viable claim for fraud, Plaintiff must (1) show "the defendant made a false representation of material fact with knowledge of its falsity," *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002) (internal citations omitted); and (2) satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  "Mere allegations of fraud, … averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). "At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm." *Equipment & Sys. for Industry, Inc. v. Northmeadows Constr. Co., Inc.,* 59 Mass. App. Ct. 931, 931-32 (2003) (*citing Friedman v. Jablonski,* 371 Mass. 482, 488-89 (1976)).

Plaintiff does not satisfy such pleading requirements in her Complaint.  The only specific misstatement Plaintiff accuses BNYM of having made is BNYM's identification of itself as the Mortgage holder with a right to foreclose. *See* Compl. ¶¶ 119-121.[7]  Even if this statement were indeed false—though the public record shows it is not—it does not constitute actionable fraud,

---

[6] As explained in footnote 1, above, the Court may consider these documents without converting this motion to dismiss into one for summary judgment.

[7] Any additional allegations by Plaintiff of misstatements by "Countrywide and other predecessors in interest," Compl. ¶ 118, cannot provide foundation for any fraud claim against **BNYM**, because BNYM is not alleged to have made such statements. *See, e.g., Russell,* 772 N.E.2d at 1066 (requirements for pleading fraud include "the ***defendant*** [having] made a false representation of material fact") (emphasis added).

because Plaintiff has not alleged that she relied on BNYM's misrepresentation, or that BNYM's identification of itself as Mortgage holder in any way induced Plaintiff to act to her detriment. Evidence of detrimental reliance by a plaintiff is absolutely crucial to any fraud claim. *See Equipment & Sys. for Industry*, 59 Mass. App. Ct. at 931-32. Without it, Plaintiff fails to state an actionable claim under Fed. R. Civ. P. 9.

Moreover, the facts and documents underlying Plaintiff's Complaint, pertaining to the powers granted MERS under the Mortgage and MERS's assignment of Mortgage to BNYM, legally establish BNYM's role as Mortgage holder with the power to foreclose, and thereby refute any conclusion by Plaintiff that BNYM has fraudulently misrepresented itself. The Mortgage on its face identifies MERS as both "nominee for Lender [Countrywide Home Loans, Inc.][8] and Lender's successors and assigns" and "mortgagee," holding legal title to the Mortgage interest granted by the borrowers, and with the power to enforce the terms of the Mortgage. *See* **Exhibit 1** at 1 (Definition C), at 1-3; *See also In re Huggins*, 357 B.R. 180 (D. Mass. 2006) ("[M]ERS is the record mortgagee under the Mortgage with the powers expressly therein set forth, including the power of sale.")). By executing the Mortgage, Plaintiff expressly consented to MERS's role as nominee/mortgagee and authorized MERS "to take any action required of the Lender" to enforce its rights under the Mortgage. **Exhibit 1** at 3.

Although Plaintiff now seeks to challenge MERS's authority to act as mortgagee and nominee for the lender, despite Plaintiff's express grant of power to MERS in the Mortgage agreement, her challenge has no merit. Case law and the public record directly contradict

---

[8] According to New York's Department of State website, Countrywide Home Loans, Inc. is an active corporation organized under the laws of New York, with a registered principal place of business at 4500 Park Granada, Calabasas, California, 91302. *See* http://www.dos.ny.gov/corps/bus_entity_search.html (last visited May 10, 2012). Plaintiff is wrong, therefore, when she asserts in Paragraph 54 of her Complaint that "Countrywide no longer exists and did not exist at the time of the assignment."

Plaintiff's assertion that "MERS has no agency authority" to assign the Mortgage to BNYM. Compl. ¶ 54.  "[C]ourts have repeatedly rejected arguments attacking the authority of MERS to assign mortgages." *In re Marron* 462 B.R. 364, 374 (Bankr. D. Mass. 2012).  Numerous courts have found that MERS possesses the customary rights of a mortgagee that may act on behalf of the lender, its successors and assigns in executing an assignment of mortgage.  *See Culhane v. Aurora Loan Services of Nebraska,* 826 F. Supp. 2d 352 (D. Mass. 2011); *Kiah v. Aurora Loan Services, LLC,* 2011 WL 841282, at *4 (D.Mass. Mar. 4, 2011) (holding that MERS's "power to act as the agent of any valid note holder" includes the power to assign); *Schwartz v. HomEq Servicing (In re Schwartz)*, No. No. 07–04098, 2011 WL 3667494, at *5 (Bankr. D. Mass. Aug. 22, 2011). (as mortgagee, MERS has authority to assign mortgage); *Randle v. GMAC Mortg., LLC*, No. 09 MISC 408202(GHP), 2010 WL 3984714, at * 1 (Mass. Land. Ct. Oct. 12, 2010) (treating MERS assignment as valid without question).

MERS was, therefore—as mortgagee of record and nominee for the lender and its successors and assigns—legally entitled to assign the Mortgage in this case to BNYM.  And BNYM was, thereafter, legally empowered to foreclose pursuant to Mass. Gen. Laws ch. 183 § 21, which provides:  "The statutory power of sale may be exercised by the mortgagee or his executors, administrators, successors or assigns."  For this and the other reasons set forth above, the Court should dismiss with prejudice Plaintiff's claim for fraud (Count I).

### III. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST BNYM FOR TRANSACTING BUSINESS WITHOUT AUTHORITY (COUNT II).

Plaintiff's next, equally meritless, strategy for getting around BNYM's Mortgage-based foreclosure rights is to accuse BNYM of unlawfully transacting business within the Commonwealth by way of its foreclosure action.  Plaintiff tries to paint BNYM as a "mortgage servicer and debt collector" "engag[ing] in professional services within the Commonwealth,"

Compl. ¶ 137, but that depiction of BNYM is shown to be false by Plaintiff's own prior identification of *Bank of America*, not BNYM, as the servicer of Plaintiff's Mortgage. *Id.* ¶ 66. The Complaint contains no factual allegation that BNYM has ever originated, serviced, or collected payments for any mortgage within Massachusetts. BNYM is simply a mortgage holder, attempting to foreclose on a mortgage it acquired, not a purveyor of any goods or services.

Holding a mortgage does not equate to transacting business. A mortgagee can, after all, be an actual person—such as, *e.g.*, an individual who loans money to a relative or friend in exchange for an IOU secured by a mortgage lien. And such an individual would be entitled to foreclose on the loan if the borrower defaults, without the need to first register as a business in the Commonwealth. Massachusetts' foreclosure statute contains no restriction against foreclosure by a non-business or foreign-corporation mortgage holder. Mass. Gen. Laws ch. 183 § 21 ("[t]he statutory power of sale may be exercised by the mortgagee or his executors, administrators, successors or assigns").

Furthermore, even if Plaintiff's allegations were true, and BNYM was transacting business in the Commonwealth without a license, Plaintiff's Count II still would fail, because Plaintiff has no individual standing to assert a private cause of action for relief based on that conduct. For this and the other reasons set forth above, the Court should dismiss Plaintiff's Count II with prejudice.

### IV. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER MASS. GEN. LAWS CH. 93A (COUNT III).

Plaintiff's third claim reiterates her challenge to BNYM's right to foreclose, this time in the guise of a Chapter 93A claim for unfair trade practices, and it fails for the same reason as does Plaintiff's Count I. Contrary to Plaintiff's assertion that BNYM has violated the

Massachusetts foreclosure statute's reservation of foreclosure power to "the mortgagee or his executors, administrators, successors or assigns," Compl. ¶ 147 (*quoting* Mass. Gen. L. ch. 183 § 21), that provision actually ***confirms*** BNYM's power to foreclose, because BNYM is the current holder of the Mortgage pursuant to the recorded June 2011 Assignment of Mortgage (Exhibit 2) from the mortgagee/nominee for the lender, MERS. *See supra* Pt. II. Accordingly, BNYM was legally entitled to initiate foreclosure under the law, and its initiation of foreclosure does not violate Chapter 93A. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011), cited in Paragraph 148 of Plaintiff's Complaint, does not support a contrary conclusion, because here, as opposed to the situation in *Ibanez*, there is "proof that the assignment was made by a party that itself held the mortgage." *Id.* at 651.

Furthermore, with respect to Plaintiff's additional allegation that BNYM "failed to properly administer the government loan modification programs (e.g., HAMP and HAFA) …," Compl. ¶ 149, Plaintiff lacks standing to assert such a claim. The agreements between various banking institutions and the federal government by which HAMP and HAFA protocols were established does not provide for any private right of action by individual citizens. *See Provost v. Saxon Mortg. Services, Inc.*, No. 4:11-cv-40137-TSH, 2012 WL 1065481, at *2 (D. Mass. March 27, 2012). Private citizens, such as Plaintiff, cannot sue to enforce a mortgage servicer's obligations under HAMP regulations. Plaintiff cannot circumvent this restriction by putting a "93A" label on her claim.

Moreover, Plaintiff's 93A claim must fail because Plaintiff nowhere in her Complaint alleges facts showing that she complied with Chapter 93A's pre-litigation demand requirement. A Plaintiff alleging violations of Chapter 93A must assert in her pleading that she complied with the statute's pre-litigation notice requirement by sending a written demand letter to the defendant

at least 30 days before filing suit. *See* M.G.L. ch. 93A, §9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent"); *see also Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (explaining that ch. 93A demand requirement "is not merely a procedural nicety, but, rather, '***a prerequisite to suit***'" and "***must be alleged in the plaintiff's complaint***.") (emphasis added) (*quoting Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)). Plaintiff fails to include such an assertion in her Complaint, and thus fails to meet the minimum pleading requirements of Chapter 93A. For this and the other reasons set forth above, the Court should dismiss Plaintiff's Count III.

### V. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER MASS. GEN. LAWS CH. 93A § 48, UNFAIR OR DECEPTIVE TRADE PRACTICES AS DEFINED BY 40 C.M.R. 3.09, OR BREACH OF FIDUCIARY DUTY (COUNTS IV AND VI).

With regard to Plaintiff's claims in Counts IV and VI of the Complaint, these are claims primarily aimed ***not*** at BNYM, but at the original lender, Countrywide Home Loans, Inc., for alleged misrepresentations and omissions during the origination of Plaintiff's Mortgage in March 2007. *See* Compl. ¶¶ 155-166, 173-85. Plaintiff alleges, *e.g.*, that "Countrywide[] failed to fully disclose the nature and role of MERS, the intent to sell the Mortgage Loan into securitization," etc. *id.* ¶ 161, and tries now to attribute those failures to BNYM under some unsupportable theory that BNYM has failed to correct Countrywide's previous mistakes. *See id.* ¶ 160. Whether or not Countrywide committed the acts alleged in 2007, BNYM cannot be held liable for those acts under the theories Plaintiff alleges in Counts IV and VI. *See Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 545, 536 N.E.2d 587, 591 (1989).

Even if BNYM could somehow be held liable for Countrywide's actions in 2007, any claim based on those actions is barred by the statute of limitations. Chapter 93A claims must be

filed within four years of an alleged unfair trade practice, *see* M.G.L. c. 260, §5A, thus Plaintiff's right to assert a claim under this chapter expired last year, in March 2011.

Furthermore, Plaintiff does not have a private right of action under the regulations on which Count IV is based. M.G.L. c. 93A § 2(c) allows the Attorney General to make rules and regulations interpreting the provisions of the statute. In order to provide guidance on what conduct will be considered unfair and deceptive relating to mortgage lenders and mortgage brokers, the Attorney General created 940 CMR 8.06. None of the regulations Plaintiff lists provide her with a private right of action. *See In Re Deassis*, 2011 WL 765928, at *2, (Bkrtcy.D.Mass. Feb. 25, 2011); *In Re Mae*, 2011 WL 2413319, at *2, (Bkrtcy. D. Mass. June 10, 2011). In rejecting a private cause of action under a Massachusetts debt collection regulation, the court in *Ishaq v. Wachovia Mortgage, FSB*, 2010 WL 1380386 (D.Mass. April 2, 2010). held that Massachusetts courts are "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference.' ... Without an enabling statute to support it, a private cause of action cannot be inferred solely from an agency regulation." *Id*. at *4 (internal citations omitted). Similarly here, there is no indication in the language of the regulation itself or its implementing statute that a private right of action was intended or created.

Also, as to Plaintiff's claim for breach of fiduciary duty in Count IV, Compl. ¶¶ 173-185—which alleges that BNYM, "through its originating predecessor, Countrywide, is liable for ***Countrywide's*** breach of fiduciary duty owed to Plaintiff[,]" *id.* ¶ 175 (emphasis added)—no such claim can stand, even if Plaintiff could transfer Countrywide's alleged liability to BNYM. "Under Massachusetts law, the relationship between a lender and a borrower, without more, does not establish a fiduciary relationship." *Famm Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102

(1st Cir. 2009); *see also Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 195 (D. Mass. 2006) (holding no fiduciary duty owed by mortgagee to borrower); *Flaherty v. BayBank Merrimack Valley, N.A.*, 808 F. Supp. 55, 64 (D. Mass. 1992) ("[O]one party cannot unilaterally transform a business relationship into a fiduciary relationship by reposing trust and confidence in another."). Thus, Countrywide owed no fiduciary duty to Plaintiff. Plaintiff cannot, therefore, succeed on any claim against BNYM for Countrywide's alleged breach. For this and the other reasons set forth above, the Court should dismiss with prejudice Plaintiff's Counts IV and VI.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF FOR NEGLIGENCE (COUNT IX)

In Count IX of her Complaint, Plaintiff turns to the theory of negligence. Compl. ¶¶ 206-214. Once again, to the extent this claim derives from any negligence by Countrywide in its origination of the Mortgage, the claim is time-barred. Under Massachusetts law, tort claims have a three-year statute of limitations.

In addition, Plaintiff fails to meet the substantive pleading requirements for a negligence claim. To establish actionable negligence, Plaintiff must show that (1) BNYM owed her a duty of care; (2) BNYM breached the duty of care; (3) Plaintiff was damaged by that breach; and (4) BNYM was the actual and proximate cause of the damage to Plaintiff. *See Delnegro v. Hampton*, No. 00WAD005, 2001 WL 242210, at *2 (Mass. App. Mar. 7, 2001). Plaintiff cannot, based upon the undisputed facts of this case, meet this criteria because, as outlined above, BNYM does not owe Plaintiff any duty of care. *See, e.g.*, *Famm Steel*, 571 F.3d at 102 (no fiduciary duty between lender and borrower). "It is fundamental that there must be a showing of a duty of care owed to the plaintiff, because there can be no negligence where there is no duty." *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801, 806 N.E.2d 933, 936 (2004). The relationship between a creditor and debtor, or borrower and lender, does not give rise to such a duty. *See*

*Lechoslaw v. Bank of Am., N.A.*, 575 F. Supp. 2d 286, 297 (D. Mass. 2008) (dismissing negligent infliction of emotional distress claim because "a bank's relationship to its customers is simply one of creditor and debtor" and is merely "an arms-length, business relationship" that cannot give rise to a duty of care) (citation and quotation marks omitted); *see also Murray v. America's Servicing Co.*, No. 2007- 01716, 2009 WL 323375, *5 (Mass. Super. Jan. 12, 2009) (allowing motion for summary judgment as to negligence claim asserted by borrower against lender because "[a] lender owes no general duty of care to a borrower").

Plaintiff's negligence claim further is barred by the economic loss doctrine. "[P]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993). Because Plaintiff is alleging negligence, she must prove that BNYM's conduct caused physical injury or property damage in order to recover economic losses. Plaintiff does not meet this pleading requirement. For this and the other reasons set forth above, the Court should dismiss with prejudice Plaintiff's Count IX.

## VII. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST BNYM FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL (COUNTS V AND X)

Plaintiff likewise fails to satisfy the pleading requirements for breach of contract and promissory estoppel, as asserted in Counts V and X of the Complaint. Count V alleges that BNYM breached: (1) " the implied obligation of good faith and fair dealing under the [unspecified] agreement;" "the implied covenant that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the [unspecified] contract;" and "the express terms of the Deed of Trust concerning transfer of interests in the Mortgage Loan." Compl. ¶¶ 167-172. In order to state a cognizable claim for breach of contract, Plaintiff must allege sufficient facts to demonstrate that: (a) she had an enforceable agreement with BNYM; (b)

-14-

BNYM breached the terms of that agreement; and (c) the breach caused Plaintiff's damages. *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995). Plaintiff has not alleged facts that support even *one* of these three mandatory pleading elements.

First, nowhere in the Complaint does Plaintiff state what, if any, contract between herself and BNYM forms the basis for her cause of action. It is axiomatic that without pleading this most basic of elements, Plaintiff's breach of contract claim must fail. Second, even assuming the Court concludes Plaintiff intended to allege the existence of a specific contract, such as the Mortgage agreement between Plaintiff and Countrywide Home Loans, Inc.—the only contract referenced anywhere in the Complaint—Plaintiff still has not alleged any facts demonstrating BNYM's breach of that contract. Plaintiff must allege more than conclusory statements regarding BNYM's breach. The Complaint must describe, "with substantial certainty, *the specific contractual promise the defendant failed to keep*." *Brooks v. AIG Sun America Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (emphasis added); *see also Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) ("In a contract action, this irreducible [substantial certainty] minimum *requires the pleader to 'explain what obligations were imposed on each of the parties by the alleged contract*.'") (emphasis added). Plaintiff has not alleged any fact indicating BNYM failed to perform an obligation imposed on it by the Mortgage or any other agreement. By contrast, Plaintiff outright concedes that *she* breached the Mortgage agreement by failing to make timely payments. Compl. ¶ 19. Without any facts to support the element of breach, Plaintiff is forced to rely on conclusory allegations. Such statements lack the substantial certainty necessary to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See supra* Pt. I.

A/74958217.1

Third, Plaintiff fails to plead any specific damages caused by BNYM's alleged breach. Plaintiff simply concludes, without stating facts supporting a causal link, that "as a result of [BNYM's] breach [Plaintiff] suffered damages." Compl. ¶ 172. Without pleading any facts to support these conclusory statements, Plaintiff fails to satisfy the *Iqbal* pleading standard, and her contract claim must be dismissed under Rule 12(b)(6). *See Iqbal*, 129 S. Ct. at 1949 ("[A] threadbare recital[] of the legal elements, supported by mere conclusory statements, [does] not suffice to state a cause of action.").

Plaintiff's related Count X, alleging promissory estoppel, also should be rejected as a matter of law. The doctrine of promissory estoppel requires that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Steinke v. Sungard Fin. Sys. Inc.*, 121 F.3d 763, 776 (1st Cir. 1997). To prove a claim of promissory estoppel under Massachusetts law, "a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004) (*citing Carroll v. Xerox Corp.*, 294 F.3d 231, 242 (1st Cir. 2002)). The most generous reading of Plaintiff's Complaint does not support a claim for promissory estoppel, because it fails to allege any promise whatsoever made by BNYM to Plaintiff, let alone one, which induced detrimental reliance on the part of the Plaintiff.

The fact of the matter is that Plaintiff did indeed have a mortgage contract with Countrywide to repay the loan or face foreclosure. Plaintiff breached this contract after a failed

loan modification. BNYM, as the lawful assignee of the Mortgage, can now exercise its contractual rights to foreclose on the property. For this and the other reasons set forth above, the Court should dismiss Plaintiff's Counts V and X.

### VIII. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST BNYM FOR VIOLATION OF MASS. GEN. LAW C. 140D AND CHAPTER 183 SECTION 28C (COUNT VII AND XIII).

In Counts VII and XIII of the Complaint, Plaintiff advances claims against BNYM for alleged violations of M.G.L. c.140D and M.G.L. ch. 183, § 28C. In Count VII, Plaintiff alleges that BNYM and its "predecessor Countrywide, failed to provide all material disclosures required by M.G.L. c. 140D, Section 10(a)." Plaintiff has not pled anything beyond the mere allegation that she was not given these "material disclosures." Nowhere in the Complaint does Plaintiff state what, if any, disclosures she received and what, if any, disclosures she failed to receive. Plaintiff alleges only conclusory allegations such as a "fail[ure] to clearly and conspicuously disclose, in accordance with regulations of the commissioner as provided under said Chapter 140D." Compl. ¶ 192 b. Count XIII seems to allege that Countrywide should have acted as Plaintiff's guardian and not allowed her to agree to the terms that she now believes were not in her best interest. The documents that Plaintiff signed speak for themselves.

Both Count VII and XIII are based on the refinancing of the Mortgage by Countrywide, a non-party to this action. Even if Countrywide were a party, the refinancing of the Mortgage occurred on March 14, 2007—which is over five years prior to the commencement of this suit. Consequently, all of Plaintiff's claims regarding the origination and terms of the Mortgage are barred by the applicable statutes of limitations. Thus, even if Plaintiff could establish any violations of the Predatory Home Loan Practices Act by BNYM, or by its predecessors in interest, any such claims are stale. For this and the other reasons set forth above, the Court should dismiss Plaintiff's Counts VII and XIII.

**IX.    PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST BNYM FOR QUIET TITLE, DECLARATORY JUDGMENT, ACCOUNTING, OR WRONGFUL FORECLOSURE (COUNTS VIII, XI, XII, AND XIV).**

Counts VIII, X, XI, XII, XIV all fail to state cognizable claims because they are all predicated on the erroneous assumption that BNYM has no right, title or interest on the Property. As discussed in length above, BNYM as holder of the Mortgage has every right to foreclose on the property. *See supra* Pt. II. MERS was legally entitled to assign the Mortgage to BNYM in June 2011, as it did.

Thus, Plaintiff's claims for wrongful foreclosure, quiet title, accounting, and declaratory relief fail as a matter of law. Because Plaintiff has not pled a viable claim challenging BNYM's standing to foreclose, there is no case or controversy that would warrant declaratory relief. *See* 28 U.S.C. § 2201; *20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.*, 482 F. Supp. 2d 60, 84 (D. Mass. 2007) (finding that the declaratory judgment claim failed because there was no basis in the underlying claim and therefore no case or controversy). Accordingly, these claims fail and should be dismissed by the Court.

A/74958217.1

-18-

## **CONCLUSION**

For the foregoing reasons, BNYM respectfully requests that the Court dismiss in its entirety, with prejudice, Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to meet the pleading requirements for fraud under Fed. R. Civ. P. 9(b).

Respectfully submitted,

**The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2007-2**

By its attorney,

/s/ Matthew C. Applebaum, BBO #653606
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110
Tel:  (617) 951-8000
Fax:  (617) 951-8736
matt.applebaum@bingham.com

Dated: May 30, 2012

A/74958217.1

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 30, 2012.

/s/  Matthew C. Applebaum, BBO #653606