UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| CATHLEEN BEAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )     Civil Action No. 12-10930-JCB |
|  | ) |
| THE BANK OF NEW YORK MELLON | ) |
| f/k/a THE BANK OF NEW YORK, AS | ) |
| TRUSTEE FOR THE CERTIFICATEHOLDERS | ) |
| OF CWABS, INC. ASSET-BACKED | ) |
| CERTIFICATES SERIES 2007-2 | ) |
|  | ) |
| Defendant. | ) |

_____)

**ORDER ON DEFENDANT'S MOTION TO DISMISS**
[Docket No. 7]

September 18, 2012

Boal, M.J.

On April 26, 2012, Plaintiff Cathleen Bean ("Bean") sued Bank of New York Mellon

f/k/a The Bank of New York, as Trustee for the Certificateholders of CWABs, Inc. Asset-Backed

Certificates Series 2007-2 ("BNY"), in connection with BNY's foreclosure of Bean's home

located in Eastham, Massachusetts.  Docket No. 4.[1]  BNY has moved to dismiss Bean's

complaint.[2]  Docket No. 7.  For the following reasons, the motion is granted.

_____

[1] On June 1, 2012, the parties consented to the jurisdiction of a United States Magistrate Judge for all purposes.

[2] On August 14, 2012, Bean filed a motion to amend the complaint.  Docket No. 24. None of the amendments addressed the pleading deficiencies identified in the subject motion to dismiss.  Rather, the proposed amended complaint added a new party.  In a separate decision, this Court denies the motion to amend because, inter alia, the amendments would be futile in

-1-

I.      FACTUAL AND PROCEDURAL BACKGROUND[3]

Bean purchased a home at 70 Arrowhead Drive, Eastham, Massachusetts (hereinafter the "Property").  Complaint, ¶ 3.  On March 14, 2007, Bean received a loan in the amount of $390,000 from Countrywide Home Loans, Inc. ("Countrywide").  Complaint, ¶¶ 8, 32.  The loan refinanced a prior loan that Bean had taken from another company and converted $48,000 of personal credit card debt into a secured debt.  Complaint, ¶¶ 6, 7, 11.  To secure the loan, Bean[4] gave a note to Countrywide as the lender and a mortgage on the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender.  Complaint, ¶ 33.  The mortgage was recorded in the Barnstable County Registry of Deeds in Book 21863, Page 104.  Complaint, ¶¶ 32-33.

After a period of unemployment, Bean fell behind on several payments.  Complaint, ¶¶ 17-18.  On September 17, 2009, Countrywide's loan servicer, Bank of America,[5] sent Bean a letter notifying her that the loan was in "serious default."  Def. Ex. 4, Docket No. 20-2.[6]  The letter stated that she had the right to cure the default if she paid a certain amount by December

---

light of the findings contained in this decision.

[3]  The complaint consists of 236 paragraphs and is at times rambling and hard to follow. The description therefore represents a summary of the allegations.  Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in Bean's favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[4]  Bean, together with her husband, were both signatories to the pertinent documents in this case.  However, Bean alone brings this action.

[5]  Bank of America and Countrywide are not defendants in this action.

[6]  As discussed infra, the Court will consider the documents the parties attached to their briefs.

16, 2009.  Id.  The letter also notified her that if the default was not cured, Bank of America would initiate foreclosure proceedings.  Id.

In December 2009, Bean applied for a loan modification under the federal government's Home Affordable Modification Program ("HAMP") with Bank of America.  Complaint, ¶¶ 18, 105.  Bean was subsequently enrolled in a three month trial loan modification program.  Id.  Her last payment of the trial period had to be presented to the bank twice before it cleared and was therefore considered late.  Complaint, ¶¶ 18-19.  In May 2010, Bank of America told Bean that she was not eligible for a modification because of the late payment.  Complaint, ¶ 20.

In or around November 2010, Bank of America told Bean that she could reapply for HAMP because her family income had increased and her family was in a better financial position.  Complaint, ¶¶ 22, 24.  Bean applied and was later informed that she could not be given a modification.  Complaint, ¶ 25.  By that time, Bean was so far in arrears she could not bring the loan current.  Complaint, ¶ 26.  Bean alleges that at no time was she offered, evaluated, or determined to be ineligible for the Home Affordable Foreclosure Alternatives program ("HAFA").  Complaint, ¶ 27.

On or about June 21, 2011, MERS, as nominee for Countrywide, assigned Bean's mortgage to BNY.  Complaint, Exhibit B; Def.'s Ex. 2, Docket 8-2.  The assignment was recorded in the Barnstable County Registry of Deeds in Book 25570, Page 21.  Id.  Bean alleges that this assignment was invalid because Countrywide had sold and securitized her loan into the CWABS Asset Backed Certificates Trust 2007-2 and therefore Countrywide and MERS had no

authority to assign Bean's mortgage to BNY.  Complaint, ¶¶ 43-47, 54.[7]

On or about August 1, 2011, BNY filed a notice with the Land Court Department of the Massachusetts Trial Court claiming authority to foreclose on the Property by virtue of the mortgage.  Complaint, ¶ 40; Def. Ex. 4.  The notice included a July 25, 2011 Mortgagee's Affidavit completed by BNY pursuant to Mass. Gen. Laws ch. 244 § 35A that claimed that BNY was authorized to act on behalf of the mortgagee and attached the September 17, 2009 letter from Bank of America notifying Bean of her default.  On March 28, 2012, BNY's attorneys notified Bean that a foreclosure sale was scheduled for April 27, 2012 and provided a notice of intention to foreclose and a notice of sale set to appear in *The Cape Codder.*  Complaint, ¶ 41, Exhibit A.  The notices claimed the right and authority to conduct the sale by virtue of a power of sale clause contained in the mortgage and identified BNY as holder of the mortgage.  Id.

On April 26, 2012, Bean sued BNY in state court for: (1) fraud; (2) transacting business without authority in violation of Mass. Gen. Laws ch. 156D, §§15.01 – 15.04 and 950 C.M.R. § 105.04(d); (3) violation of Mass. Gen. Laws ch. 93A; (4) violation of Mass. Gen. Laws ch. 93, § 48 and 940 C.M.R. § 3.09; (5) breach of contract; (6) breach of fiduciary duty; (7) violation of Mass. Gen. Laws ch. 140D; (8) quiet title; (9) negligence; (10) promissory estoppel; (11) declaratory judgment; (12) accounting; (13) violation of Mass. Gen. Laws ch. 183 § 28C; and (14) wrongful foreclosure.  Docket No. 4.  Bean also sought a temporary restraining order to prevent the foreclosure sale.  Docket No. 4, p. 29-45.

On May 23, 2012, BNY removed the action to this Court on the basis of diversity

---

[7] Although the loan was executed on March 14, 2007, Bean alleges that it was sold and securitized on February 28, 2007.  Complaint, ¶¶ 51-52.

jurisdiction.  Docket No 1.  BNY filed its motion to dimiss on May 30, 2012.  Docket No. 7.[8]

The Court heard oral argument on August 15, 2012.  In response to questions at oral argument,

BNY submitted supplemental briefing on August 22, 2012, and Bean did likewise on August 29,

2012.  Docket Nos. 27-28.

II.     ANALYSIS

        A.     Scope Of The Record

        The parties both attach documents to the pleadings and briefs.  The parties do not dispute

the authenticity of these documents.  In considering the merits of a motion to dismiss, the Court

may look only to the facts alleged in the pleadings, documents attached as exhibits or

incorporated by reference in the complaint and matters of which judicial notice can be taken.

Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248

F.3d 1127 (1st Cir. 2000).  Courts have made narrow exceptions for documents the authenticity

of which are not disputed by the parties, for official public records, for documents central to

plaintiffs' claim or for documents sufficiently referred to in the complaint.  Watterson v. Page,

987 F.2d 1, 3 (1st Cir. 1993).  Consideration of other materials is generally forbidden unless the

motion is properly converted into one for summary judgment.  Id.

        Bean attaches the following documents to her complaint: (1) a March 28, 2012 letter to

Bean from BNY's attorneys notifying her of the scheduled foreclosure sale and attaching a

notice of intention to foreclose and a notice of sale set to appear in *The Cape Codder* (Exhibit

A); (2) the June 21, 2011 assignment of the mortgage from MERS as nominee for Countrywide

---

        [8] On June 14, 2012, BNY stated that it would not foreclose on the Property until this
Court rules on its motion to dismiss.  Docket No. 13.

to BNY (Exhibit B); a Public Browse and Search Filing Results from the Massachusetts's

Secretary of State webpage for BNY, Inc. (Exhibit C); and the legal description of the Property

(Exhibit D).

BNY attaches the following documents to its motion to dismiss: (1) the March 14, 2007

mortgage (Exhibit 1); and (2) the June 21, 2011 assignment of the mortgage from MERS as

nominee for Countrywide to BNY (Exhibit 2).  Docket No. 8.  BNY attaches the following

documents to its reply to Bean's opposition: (1) a Legal Notice: Notice of Mortgagee's Sale of

Real Estate that BNY asserts appeared in *The Cape Codder* on April 6, 2012, April 13, 2012, and

April 20, 2012 (Exhibit 3); (2) a July 23, 2011 Mortgagee's Affidavit and attached September

17, 2009 default letter from Bank of America that BNY filed in the foreclosure action (Exhibit

4); and (3) a March 14, 2007 Adjustable Rate Note signed by Bean (Exhibit 5).  Docket No. 20.

This Court finds that it may consider all of the attached documents because they are

central to Bean's claim.  In addition, at oral argument, Bean's counsel stated that he did not

object to the Court's consideration of any of BNY's attachments.  In any event, the documents

are public records (Exhibits 3, 4) or are sufficiently referred to in the complaint (Exhibits 1, 4,

5).

B.     Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

C.    Wrongful Foreclosure

Bean alleges that BNY engaged in a wrongful foreclosure because at the time: (1) it knew or should have known that its assignment was invalid; (2) it had not exhausted or offered all loan modification opportunities under HAMP and other government related programs; (3) it failed to observe all pre-foreclosure and statutory foreclosure requirements prior to issuing the notice of foreclosure; and (4) it failed to honor contractual obligations prior to issuing the notice of foreclosure.  Complaint, ¶¶ 232-6.  BNY argues that Bean has failed to state a claim because BNY has the authority to foreclose.  Docket No. 8, p. 7, 17.

As an initial matter, Bean has not identified the "contractual obligations" that BNY

allegedly failed to honor.  In addition, Bean has not provided any authority that a violation of

HAMP can be the basis for a wrongful foreclosure claim.  Accordingly, the Court will focus on

Bean's claim that BNY did not have a valid assignment and that it failed to observe the statutory

foreclosure requirements prior to issuing the notice of foreclosure.

> 1. <u>Massachusetts Foreclosure Law</u>

If a mortgage provides for a power of sale, it includes by reference the statutory power of

sale set out in Mass Gen. Laws. ch. 183, § 21, and further regulated by G.L. ch. 244, §§ 11-17C.

<u>Eaton v. Fed. Nat. Mortg. Ass'n</u>, 462 Mass. 569, 581 (2012); <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>,

458 Mass. 637, 646 (2011).  Pursuant to the statutory scheme, after a mortgagor defaults in the

performance of the underlying note, the mortgage holder may sell the property at a public

auction and convey the property to the purchaser in fee simple, "and such sale shall forever bar

the mortgagor and all persons claiming under him from all right and interest in the mortgaged

premises, whether at law or in equity."  <u>Ibanez</u>, 458 Mass. at 646 (quoting Mass. Gen. Laws ch.

183, § 21).  Due to the "substantial power that the statutory scheme affords to a mortgage holder

to foreclose without immediate judicial oversight," Massachusetts law requires that "'one who

sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid

execution of the power, and the sale is wholly void.'"  <u>Id.</u> at 646 (quoting <u>Moore v. Dick</u>, 187

Mass. 207, 211 (1905)).  A mortgage holder also has a duty to "act in good faith and . . . use

reasonable diligence to protect the interests of the mortgagor."  <u>Id.</u> at 647 n. 16.

"One of the terms of the power of sale that must be strictly adhered to is the restriction on

who is entitled to foreclose."  <u>Id.</u> at 647.  "The 'statutory power of sale' can be exercised by 'the

mortgagee or his executors, administrators, successors or assigns.'"  <u>Id.</u> (quoting Mass. Gen.

Laws. ch. 183, § 21).  Similarly, under Mass. Gen. Laws ch. 244, § 14, "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person" is empowered to exercise the statutory power of sale.  Id. (quoting Mass. Gen. Laws ch. 244, § 14).  "Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these statutes is void."  Id.  (citing Chace v. Morse, 189 Mass. 559, 561 (1905)).  Thus, "only a present holder of the mortgage is authorized to foreclose on the mortgaged property[.]"  Id. at 648.[9]

"A related statutory requirement that must be strictly adhered to in a foreclosure by power of sale is the notice requirement articulated in G.L. c. 244, § 14."  Id. at 647.  Pursuant to that provision,

> no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, advance notice of the foreclosure sale has been provided to the mortgagor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or of general circulation in that town.

Id. (quoting Mass. Gen. Laws ch. 244, § 14).  "Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property," the holder of the mortgage must be identified

---

[9]  The Court recognizes that the Massachusetts Supreme Judicial Court recently interpreted the term "mortgagee" in Mass. Gen. Laws ch. 244 § 14 to mean "a mortgagee who also holds the underlying mortgage note" and permits an authorized agent of the note holder to stand "in the shoes" of the "mortgagee."  Eaton, 462 Mass. at 584, 586.  However, this interpretation only applies to foreclosure actions for which the mandatory notice of sale was given after June 22, 2012.  Id. at 588-9.  As the First Circuit recently stated, Eaton, including its decision to make the new mortgagor-protective rule apply only prospectively, is binding on federal courts.  McKenna v. Wells Fargo Bank, N.A., No. 11-1650, 2012 U.S. App. LEXIS 17694, at *18 (1st Cir. August 16, 2012).

in the notice of sale, and any failure to do so "may render . . . the foreclosure sale void." Id. at 648.  The key, therefore, "is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order [to] accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale . . . ." Id. at 651.

        2.    <u>Validity Of Assignment</u>

Bean challenges the assignment of the mortgage to BNY on two grounds, specifically that: (1) the assignment of the mortgage is defective as Countrywide had no interest in the mortgage or note because it had been securitized and sold to a different entity on February 28, 2007; and (2) MERS had no authority to assign the mortgage.  Complaint, ¶¶ 43-55.

Bean has failed to state a claim that BNY's assignment is invalid.  Bean's complaint alleges that the note and the mortgage were created on March 14, 2007, two weeks after she alleges the securitization occurred.  Complaint, ¶¶ 52-55.  Thus, any claim that Countrywide no longer owned, and therefore had no right to assign, the loan appears to be belied by Bean's complaint. [10]

Nor is there any merit to Bean's challenge that MERS had no authority to assign the mortgage.  The mortgage identifies MERS as nominee for Countrywide and the mortgagee with power to enforce the mortgage.  Def.'s Ex. 1 at 1.  By executing the mortgage, Bean herself authorized MERS to take any action required by the lender to enforce the mortgage, including the right to foreclose.  Def.'s Ex. 1 at p. 3; <u>see also</u> <u>Francis v. CitiMortgage, Inc.</u>, No. 11-11091, 2012 U.S. Dist. LEXIS 42233, at * 2 (D. Mass. Mar. 28, 2012) ("[I]f a mortgage names MERS

---

[10]  When questioned at oral argument, Bean offered no explanation as to how her theory worked given the dates presented in the complaint.

as mortgagee and as nominee for the lender or its assigns, MERS has the authority to assign the

mortgage to another entity.").  Thus, any challenge to MERS' authority to assign the mortgage

fails.

      3.    <u>Statutory Foreclosure Requirements</u>

Bean's specific challenges to the foreclosure proceedings also fail.  Bean alleges that: (1)

BNY failed to provide proper notice of Bean's right to cure a default at least 150 days prior to

instituting foreclosure proceedings in violation of Mass. Gen. Laws ch. 244 § 35A, <u>see</u>

Complaint, ¶ 113; (2) BNY failed to cause notices of sale to be published for three successive

weeks in a local newspaper pursuant to Mass. Gen. Laws ch. 244 § 14, <u>see</u> Complaint, ¶ 114;

and (3) BNY's notice of foreclosure failed to reference any assignment or authorizing documents

to support its right to foreclose in violation of Mass. Gen. Laws ch. 244 §§ 14 and 35A, <u>see</u>

Complaint, ¶¶ 115.

At oral argument, Bean's counsel conceded that he was not pursuing a wrongful

foreclosure claim on this basis.  In any event, as evidenced by the mortgagee's affidavit filed in

the Massachusetts Land Court, Bean was notified of her right to cure her default in accordance

with Chapter 244, § 14.  <u>See</u> Def.'s Ex. 4.  Bean received the notice of foreclosure sale, <u>see</u>

Complaint ¶ 41, and the notice of foreclosure sale appeared in *The Cape Codder* for three

successive weeks.  <u>See</u> Def.'s Ex. 3.  Finally, the notice of foreclosure sale specifically states

that BNY holds the mortgage.  <u>See</u> Exhibit A, Def.'s Ex. 3.  Because BNY had a valid

assignment of Bean's mortgage at the time of the notice of sale and provided the proper notice, it

had the authority to foreclose, and BNY cannot be held liable for wrongful foreclosure.

D.     Fraud (Count I)

Bean alleges that BNY fraudulently misrepresented that it had the legal right, interest and/or authority to foreclose, commenced foreclosure proceedings without being the present holder of the mortgage, and used false documentation to facilitate the foreclosure.  Complaint, ¶¶ 119-123, 129, 130.  Bean also alleges that BNY knew or should have known that: (1) the Wall Street investment bankers and the originator of the loan waived, forfeited, invalidated, and/or nullified the mortgages and any right of foreclosure by securitizing it; and (2) the original lender used MERS to separate and shield the liabilities associated with mortgage ownership. Complaint, ¶¶ 124-126.[11]

To state a fraud claim under Massachusetts law, a plaintiff must allege that "the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage."  Juarez v. United States Bank N.A., 11-10318, 2011 U.S. Dist. LEXIS 128087, at * 27 (D. Mass. Nov. 4, 2011) (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009)).  Fraud claims must be plead with particularity.  Fed. R. Civ. P. 9(b); see also Hayduk v. Lanna, 775 F. 2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud . . . averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times

---

[11]  Bean also alleges that she bargained for a fixed rate mortgage, but received an adjustable rate mortgage.  Complaint, ¶ 132.  Bean conceded at oral argument that she was not pursuing this claim.  In any event, Bean fails to allege any plausible basis on which BNY could be held liable for the fraudulent actions of Countrywide, the predecessor mortgagee.  See Cazales v. HSBC Bank, NA, No. 12-10263, 2012 U.S. Dist. LEXIS 75915, at * 9 (D. Mass. June 1, 2012); McBride v. Am. Home Mortg. Servicing, Inc., No. 11-10998, 2012 U.S. Dist. LEXIS 36964 (D. Mass. March 19, 2012).

such accusations are repeated") (citing cases).  "A complaint claiming fraud must detail the who, what, where and when of the alleged fraudulent statement."  <u>Juarez</u>, 2011 U.S. Dist. LEXIS 128087 at * 30 (<u>citing</u> <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996); <u>Varney v. R.J. Reynolds Tobacco Co.</u>, 118 F. Supp. 2d 63, 68 (D. Mass. 2000)); <u>see</u> <u>also</u> <u>McKenna</u>, 2012 U.S. App. LEXIS 17694, at *27-8 (upholding dismissal of complaint for failure to "specify the time or place of [the] misrepresentations or their real content.").

Bean fails to plead a plausible fraud claim.  The complaint fails to identify a fraudulent statement, who made that statement, as well as when and where the statement was made.  Rather, it makes only generalized allegations.  <u>See</u> Complaint, ¶¶ 117-123.  Therefore, the complaint fails to satisfy the heightened pleading requirements of Rule 9(b).  Even if Bean's complaint did satisfy the requirements of Rule 9(b), the fraud claim fails because she does not allege any justifiable reliance on her part.  Specifically, Bean does not allege how BNY's representation that it owned the mortgage when it initiated foreclosure proceedings was material to a decision she made during the foreclosure process.[12]  Bean does accuse BNY of falsely identifying itself as the mortgage holder with a right to foreclose.  Complaint, ¶¶ 119-121.  As discussed above, however, this statement is legally incorrect.   Accordingly, Bean's fraud claim is dismissed.

E.    Transacting Business Without Authority Under Mass. Gen. Laws ch. 156D, §§15.01 – 15.04 (Count II)

Bean alleges that BNY filed a certificate of registration with the secretary of state, but such certificate was faulty and therefore BNY is unable to pursue a foreclosure action in

---

[12]  Bean argues in her supplemental memorandum that she has alleged detrimental reliance because she "dealt in work-out under HAMP with the entities represented to have authority to bind the mortgagee or note-holder."  Docket No. 28, p. 3.  These allegations do not appear in the Complaint.  In any event, she still fails to allege how this reliance was detrimental.

Massachusetts.  Complaint, ¶¶ 133-141.

Mass. Gen. Laws ch. 156D, § 15.01 requires foreign corporations transacting business within Massachusetts to deliver a certificate of registration to the secretary of state.  Mass. Gen. Laws. ch. 156D, § 15.01.  A foreign corporation cannot maintain a proceeding in any court in Massachusetts without delivering such a certificate.  Mass. Gen. Laws. ch. 156D, § 15.02.  Bean has provided no authority that a private citizen may maintain a cause of action under this provision and conceded at oral argument and her supplemental memorandum that there was no private right of action.  Docket No. 28, p. 4.[13]  Indeed, Section 15.02(d) states that violators are liable to Massachusetts for the time period during which they transacted business without delivering the necessary certifications.  Mass. Gen. Laws ch. 156D, § 15.02(b); see also Sulprizio v. MGC Mortgage, Inc., No. 11-12186, 2012 WL 904898, at * 1 (D. Mass. March 16, 2012) (no private right of action under Mass. Gen. Laws ch. 156D); accord City of Westfield v. Harris & Assoc. Painting, Inc., 567 F. Supp. 2d 252, 257-8 (D. Mass 2008) (purpose of Mass. Gen. Laws ch. 156D is to ensure proper supervision and regulation of foreign corporation by state officials).  Accordingly, Count II is dismissed.

    F.    Violation Of Mass. Gen. Laws ch. 93A (Count III)

Bean alleges that BNY is liable under Chapter 93A for: (1) violating the statutory requirements for initiating a foreclosure; (2) exercising the power of sale in violation of Mass.

---

[13]  Bean argues in her supplemental memorandum that the alleged Chapter 156D violation pertains to her breach of contract and Chapter 93A claims.  Docket No 28, p. 4.  However, Bean did not make such allegations in her complaint and has not provided any support for her contention that a violation of Chapter 156D is a predicate for a violation of Chapter 93A.  In addition, as discussed infra, Bean has not stated a viable breach of contract claim, and therefore the Court need not address her argument that an alleged Chapter 156D violation supports this claim.

Gen. Laws ch. 183 § 21; (3) failing to satisfy all pre-foreclosure requirements prior to

commencing foreclosure proceedings; (4) failing to properly administer HAMP and HAFA[14] to

determine her eligibility; (5) failing to administer HAMP and HAFA in good faith; and (6)

failing to administer HAMP and HAFA by honoring the modification agreement and payments

Bean made in accordance with a Trial Period Plan agreement.  Complaint, ¶¶ 142-154.

Chapter 93A requires a plaintiff to serve a written demand letter on prospective

defendants at least thirty days prior to filing an action.  Mass. Gen. Laws ch. 93A § 9(3).  "The

statutory notice requirement is not merely a procedural nicety, but, rather, a pre-requisite to suit"

and "must be alleged in the plaintiff's complaint."  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5,

19 (1st Cir. 2004) (internal quotation marks and citation omitted).

Bean concedes that she did not send a Chapter 93A demand letter,[15] but argues that the

notice requirement does not apply because BNY does not maintain a place of business or assets

in Massachusetts pursuant to Mass. Gen. Laws ch. 93A, §9(3) (providing in relevant part that

subsection 3 does not apply "if the prospective respondent does not maintain a place of business

---

[14]  HAFA is a part of HAMP that offers the options of a short sale or a Deed-in-Lieu of foreclosure to homeowners who can no longer afford their mortgage payments. Burr v. JPMorgan Chase Bank, N.A., No. 11-03519, 2012 U.S. Dist. LEXIS 42493, at * 10 n. 4 (S.D. Tex. Mar. 28, 2012) (citing Backal v. Fargo, No. 11-CV-563, 2011 U.S. Dist. LEXIS 139144, at * 2 (E.D. Tex. Nov. 3, 2011)).  The Court refers herein to Bean's claims regarding HAMP and HAFA collectively as HAMP claims.

[15]  Bean states that she has subsequently sent a demand letter to BNY and that she should be allowed to amend her complaint to include such information.  Docket No. 16, p. 12.  Bean cites Tarpey v. Crescent Ridge Dairy, Inc., 47 Mass. App. Ct. 380, 391-2 (1999) in support. However, Tarpey is inapposite.  In Tarpey, the plaintiff did not bring a Chapter 93A claim in its original complaint, and only moved to amend the complaint to add a Chapter 93A claim after it had sent a demand letter in the requisite time period.  In any event, Bean's proposed amended complaint did not include such language.  See Docket No. 24-1.

or does not keep assets within the commonwealth"). Docket No. 16, p. 11-12. Although Bean is

not required to allege the legal conclusion that the demand letter requirement is inapplicable, she

must allege facts that BNY does not maintain a place of business or keep assets in Massachusetts

to show the exception to the demand letter requirement applies to plead a Chapter 93A claim.

See Sumner v. Mortgage Elec. Registration Sys., No. 11-11910, 2012 U.S. Dist. LEXIS 104416,

at * 20-23 (D. Mass. July 26, 2012); Akar v. Fed. Nat'l Mortg. Ass'n, No. 10539, 2011 U.S. Dist.

LEXIS 152952, at *56-57 (D. Mass. Feb. 8, 2012); Okoye v. Bank of New York Mellon, No. 10-

11563, 2011 U.S. Dist. LEXIS 82769, at *11-12 (D. Mass. July 28, 2011). Bean does allege that

BNY is a Pennsylvania corporation with a principal place of business in Pittsburgh,

Pennsylvania. Complaint, ¶ 2. However, as Bean conceded at oral argument, the complaint fails

to allege any facts from which the Court could reasonably infer that BNY does not maintain a

place of business or keep assets in Massachusetts.

Bean fails to state a claim in any event. As discussed above, Bean has not sufficiently

alleged that BNY's actions relating to the foreclosure were improper. Although a lawful

foreclosure may violate Chapter 93A if conducted in bad faith, see Kattar v. Demoulas, 433

Mass. 1, 13-14 (2000), Bean has not alleged that BNY used its right to foreclose "for a reason so

obviously against public policy." Id. at 14 (foreclosure allegedly initiated in response to

property owner's refusal to testify).

Bean's allegations regarding BNY's conduct regarding HAMP also fails. Although

HAMP does not create a private right of action for borrowers, courts in this district have found

that a violation of HAMP may violate Chapter 93A if the alleged activity would be

independently actionable under Chapter 93A as unfair and deceptive. See Okoye, 2011 U.S.

Dist. LEXIS 82769, at * 22-28.  Under these circumstances, courts have engaged in a three part inquiry:  "(1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the 'objectives and enforcement mechanisms' of HAMP."  Okoye, 2011 U.S. Dist. LEXIS 82769, at * 27-8 (citing Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011)).  Each of these three requirements must be adequately plead for a Chapter 93A action to survive a motion to dismiss.  Alvarez v. United States Bank N.A., No. 11-12324, 2012 U.S. Dist. LEXIS 86678, at * 11 (D. Mass. June 22, 2012).  Failure to grant or modify a HAMP loan, without more, is not a per se Chapter 93A violation.  Okoye, 2011 U.S. Dist. LEXIS 82769 at *24-5.

Bean has met the first element because she has alleged that BNY, as a participating servicer in HAMP, violated HAMP because it referred Bean's loan to foreclosure without first having provided her with written determination of ineligibility for HAMP, did not exhaust reasonable solicitation efforts to get her to participate in HAMP, did not allow a 30 day borrower response period, and did not provide a written certification to the foreclosure attorney or trustee stating that she was not HAMP-eligible.  Complaint, ¶¶108-111.[16]  In addition, courts in this district have found recovery under Chapter 93A to be generally compatible with the objectives and enforcement mechanisms of HAMP only in instances where there has been unfair or deceptive conduct.  Okoye,  2011 U.S. Dist. LEXIS 82769 at *29.  The key issue, then, is

---

[16]  Bean also asserts Chapter 93A claims against BNY based on Bank of America's conduct.  Complaint, ¶¶ 152-153.  Bean cannot maintain such a claim under Chapter 93A.  See Sulprizio, 2012 WL 904898, at * 1.  Accordingly, any such claim is dismissed.

whether Bean has sufficiently plead that BNY's alleged HAMP violations are unfair or deceptive in and of themselves.

Allegations "of more than mere technical violations and clerical errors" are required to support a Chapter 93A claim predicated on HAMP violations.  Okoye,  2011 U.S. Dist. LEXIS 82769 at *29-30; Morris, 775 F. Supp. 2d at 263.  "The complaint must demonstrate unfairness to the degree of factual detail required by Iqbal and Twombly.  In other words, a complaint cannot merely '[tender] naked assertions devoid of further factual enhancement.'" Morris, 775 F. Supp. 2d at 263 (quoting Iqbal, 129 S.Ct. at 1949).  Complaints that have survived a motion to dismiss have "alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts have found could amount to unfair or deceptive practices" or have involved a "servicer's alleged representation that compliance with the [Trial Period Plan] would lead to permanent modification, which thereby induced the homeowners to continue payments when the servicer never intended to modify the loan." Okoye,  2011 U.S. Dist. LEXIS 82769 at * 30-32 (collecting cases).  None of these factors are present here.  Bean has alleged only technical violations of HAMP without the necessary elements of unfair or deceptive conduct.  She has provided no specifics about BNY's conduct and instead makes only conclusory allegations regarding HAMP.  Accordingly, Count III is dismissed.

G.    Violation Of Mass. Gen. Laws ch. 93, § 48 (Count IV)

Bean fails to state a claim for a violation of Mass. Gen. Laws ch. 93, § 48 (the Home Solicitation Act).  Bean conceded as much at oral argument.  Indeed, this statute applies to agreements "providing for the sale or lease of goods, or the rendering of services, or both,

primarily for personal, family or household purposes in excess of twenty-five dollars in value

and which is consummated by a party thereto at a place other than the address of the seller or

lessor . . . ."  Mass. Gen. Laws ch. 93, § 48.  Although Bean alleged that she signed the mortgage

at her home, see Complaint at ¶ 13, she has not alleged, nor could she, that the mortgage is a

"good."  Furthermore, the Act is intended "to protect consumers against being overborne by high

pressure tactics of vendors making door to door pitches in places of residence."  Cazales v.

HSBC Bank, NA, 2012 U.S. Dist. LEXIS 75915 (D. Mass. June 1, 2012) (quoting Donaher v.

Porcaro, 47 Mass. App. Ct. 650, 652 (1999)); see also Deere & Co. v. Ford, No. 96-4848, 2002

Mass. Super. LEXIS 296, at *35 (Mass. Super. Jul. 23, 2002) (Home Solicitation Act did not

apply to guaranty).  Even if this statute were applicable, Bean has not alleged that these

circumstances were present during her execution of the mortgage.  Accordingly, her claim under

Mass. Gen. Laws ch. 93, § 48 is dismissed.

> H.     Breach Of Contract (Count V)

Bean alleges that BNY breached the express terms of the mortgage concerning transfers

of interest in the note and mortgage, breached the implied covenant of good faith and fair

dealing, and refused to honor the agreement in a fair and equitable manner.  Complaint, ¶¶ 167-

172.  As a result, Bean alleges she suffered "damages."  Complaint, ¶ 172.

In order to state a claim for breach of contract, Bean must allege "that a valid, binding

contract existed, the defendant breached the terms of the contract, and [she] sustained damages

as a result of the breach."  Ford v. Lehman Capital, No. 10-40092, 2012 U.S. Dist. LEXIS

53551, at *16  (D. Mass. Apr. 17, 2012) (quoting Brooks v. AIG Sunamerica Life Assur. Co.,

480 F.3d 579, 586 (1st Cir. 2007)).  Under this standard, a plaintiff  "must do more than allege,

in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Id. Bean has failed to comply with this standard. Her claim merely relates vague generalities about a breach of an unspecified contract. Even if the Court assumes that Bean intends to state that the mortgage is the subject contract, she does not describe with substantial certainty the specific contractual promise that BNY failed to keep or the damages incurred by Bean as a result.

Bean attempts to elucidate her breach of contract claim in her brief. There, she states that BNY breached the "explicit alienation covenant" in Paragraph 20 of the mortgage by selling the note without the mortgage, and breached the clause in Paragraph 22 by failing to notify Bean of the right to bring a court action to challenge the default status or assert other defenses to acceleration and sale. Docket No. 16, p. 15. It is unclear, however, what Bean is alleging with respect to Paragraph 20. Paragraph 20 of the mortgage specifically states that the note or a partial interest in the note (with the mortgage) could be sold without prior notice to Bean. Docket 8-1, p. 9. Regarding Paragraph 22, Bank of America's September 2009 letter, see Def.'s Ex. 4, stated that Bean could bring a court action to challenge the default status or assert defenses to acceleration and foreclosure.

To the extent Bean attempts to assert a breach of contract claim on the basis of her numerous wrongful foreclosure allegations, as described above, these claims lack legal merit. Accordingly, Bean's breach of contract claim fails.[17]

---

[17] Bean asserts, for the first time in her opposition, that she is a third party beneficiary to the Servicer Participation Agreement that Bank of America entered into with the federal government. Docket No. 16, p. 15-16. Even assuming, arguendo, that the Court can consider this claim not alleged in the complaint, it is insufficient. Bean has not alleged that BNY is in anyway a party to or bound by Bank of America's SPA agreement or that she is an intended

I.     Breach Of Fiduciary Duty (Count VI)

Bean appears to base her claim for breach of fiduciary duty on the transfer of the

mortgage to BNY.  See Complaint, ¶¶ 173-185.  First, as discussed above, this transaction was

not improper.  Second, "the relationship between a lender and a borrower, without more, does

not establish a fiduciary relationship."  Cazales, 2012 U.S. Dist. LEXIS 75915 at * 9 n. 11

(quoting FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 102 (1st Cir. 2009)).  "A fiduciary

relationship may arise in this context where the borrower reposes its trust and confidence in the

lender and the lender knows of and accepts the borrower's trust."  FAMM Steel, Inc., 571 F.3d at

102.  Here, Bean has not alleged anything other than an arms-length lender-borrower

relationship.  More is required.  See id.  Accordingly, Bean's breach of fiduciary duty claim is

dismissed.

J.     Violation Of Mass. Gen. Laws ch. 140D (Count VII)

Bean alleges that BNY, through its predecessor, violated Mass. Gen. Laws ch. 140D by

failing to make certain disclosures.  Complaint, ¶¶ 186-199.  At oral argument, Bean's counsel

withdrew this claim.  In any event, the claim is subject to dismissal because Bean failed to

delineate, with the requisite Twombly specificity, the material disclosures that Countrywide

failed to make.  See Cazales, 2012 U.S. Dist. LEXIS 75915 , at *13 n. 15.  Accordingly, Count

VII is dismissed.

---

beneficiary of this agreement.  See Speleos v. BAC Home Loans Servicing, L.P.,755 F. Supp. 2d
304, 310 (D. Mass. 2010); McKensi v. Bank of America, No. 09-11940, 2010 U.S. Dist. LEXIS
99540, at *14-16 (D. Mass. September 22, 2010); Alpino v. JPMorgan Chase Bank, No. 10-
12040, 2011 U.S. Dist. LEXIS 43210, at *10 (D. Mass. April 21, 2011); Seidel v. Wells Fargo
Bank, N.A., No. 12-10766, 2012 U.S. Dist. LEXIS 91679, at * 9 (D. Mass. July 3, 2012).

K.      Negligence (Count IX)

Bean alleges that BNY is liable for common law negligence.  Complaint, ¶¶ 206-214.

However, her claim is barred by the economic loss doctrine.  Massachusetts law provides that, in

negligence actions, "purely economic losses are unrecoverable . . . in the absence of personal

injury or property damage."  FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993)

(citation omitted).  In this case, Bean does not allege personal injury or property damage from

BNY.  Accordingly, her negligence claim is dismissed.

L.      Promissory Estoppel (Count X)

Bean alleges that she and BNY entered into an agreement to conduct the foreclosure sale

on the terms of the power of sale in the mortgage, and that implicit in this contract was an

agreement that all documents recorded by BNY relative to the mortgage would be free from

fraud and reliable.  Complaint, ¶¶ 215-218.  Bean alleges that she relied on this promise to her

detriment and has been damaged as a result.  Id.

"Circumstances that may give rise to an estoppel are (1) a representation intended to

induce reliance on the part of a person to whom the representation is made; (2) an act or

omission by that person in reasonable reliance on the representation; and (3) detriment as a

consequence of the act or omission."  Anzalone v. Admin. Office of the Trial Court, 457 Mass.

647, 661 (2010) (quoting Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448

Mass. 15, 27-28(2006)).  Bean does not allege what representation BNY made to her and how it

was intended to induce reliance.  In addition, Bean's vague allegation that she relied on this

unspecified promise to her detriment fails to satisfy Iqbal.  Accordingly, Bean's promissory

estoppel claim is dismissed.

M.     Violation of Mass. Gen. Laws ch. 183 Section 28C (Count XIII)

Count XIII seeks relief for violation of Mass. Gen. Laws ch. 183, § 28C, which prohibits lenders from making home refinancing loans that are not in the borrower's interest.  Specifically, Bean argues that the refinancing included payment of credit card debt.  The inclusion of credit card debt, Bean argues, was unfavorable to her because it transformed an unsecured debt into a secured debt.  She also alleges the transaction was unfavorable to her because she thought she bargained for a fixed interest rate of 9.5%, when in fact she received an adjustable interest rate of 11.5%.  All of Bean's allegations relate to the conduct of Countrywide and Bank of America, who are not a parties to this action.  Complaint, ¶¶ 224-231.

BNY moves to dismiss this claim for various reasons, including that it should not be held responsible under this statute for its predecessor's actions and the claim is barred by the statute of limitations because the subject events took place five years prior to the commencement of the lawsuit.  Docket No. 8 at 16.  In her opposition, Bean lists Section 28(c) in the heading of an argument section, but provides no legal argument against that claim's dismissal.  Docket No. 16 at 19.  Accordingly, Count XIII is dismissed.

N.     Quiet Title, Declaratory Judgment, And Accounting (Count VIII, XI, XII)

Bean seeks an order granting "Quiet Title to Mrs. Bean."  Complaint, ¶¶ 200-205.  However, Bean is in arrears with respect to the subject mortgage.  Complaint, ¶¶ 18, 26.  A quiet title action is not available to "a mortgagor whose debt is in arrears, because, until the mortgage is discharged, the title necessarily remains under a cloud."  Oum v. Wells Fargo, N.A., No. 11-11663, 2012 WL 390271, at *3 (D. Mass. February 8, 2012).  Accordingly, Count VIII is dismissed.

In addition, all three counts are based on Bean's claim that BNY did not properly hold

the mortgage and/or wrongfully foreclosed.  Because this Court finds this argument to be without

factual or legal merit, these counts fail on this basis as well.

III.    <u>CONCLUSION</u>

For the foregoing reasons, the motion is granted.


/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge